Filed 12/23/25  P. v. Agdayan CA2/4

**REDACTED**
**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B333877 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA472889) |
| v. | |
| GRIGOR AGDAYAN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Gustavo N. Sztraicher, Judge.  Affirmed.

Eric S. Multhaup for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri, Supervising Deputy Attorney General, and Marc A. Kohm, Deputy Attorney General, for Plaintiff and Respondent.

A jury convicted defendant Grigor Agdayan of possession of child pornography and orally copulating a five-year-old child. On appeal, defendant asserts multiple evidentiary errors, some of which he claims were a result of ineffective assistance of counsel. In addition, defendant contends his sentence amounted to cruel or unusual punishment. We affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The Trial*

1. *Prosecution Evidence*

At the time of the incident, the minor victim (J.H.) was five years old. Defendant was married to J.H.'s maternal aunt, Alma. On June 30, 2017, defendant led J.H. into the laundry room in J.H.'s home [REDACTED]. J.H. did not disclose the incident.

On the evening of July 1, 2017, Alma and defendant babysat Alma's nieces, E.L. and C.L. At the time, E.L. was four years old and C.L. was three years old.

The next day, C.L., who was not yet very verbal, made a comment that made her parents believe she had been "inappropriately photographed." When questioned by her parents, E.L. told them that she had been sitting on the couch with defendant when he showed her a video on his laptop [REDACTED]. She said that defendant asked E.L. if she wanted him to do it to her as well. E.L. said no and moved towards Alma. C.L. and E.L.'s father contacted the police.

On July 13, 2017, police officers interviewed C.L. and E.L. C.L. was shy, scared, and uncommunicative. E.L. told the police [REDACTED].

2

That same day, a police officer contacted J.H.'s father, William, and asked him to bring J.H. to the police station. J.H. was scared, confused, and uncooperative. After a forensic interview, William was told that J.H. did not say "anything" and it did not "seem like anything ha[d] happened to him."

On April 4, 2018, pursuant to a search warrant, police officers seized a desktop computer and various other electronic devices from defendant's home. On the computer, officers found pornographic images of small children[1] having oral sex with men. As a result, defendant was arrested in December 2018.

In March 2019, William asked J.H. if defendant had touched his private parts. J.H. paused, looked scared, and started crying. J.H. said [REDACTED]. He stated that the incident occurred in their laundry room. William testified he later remodeled his entire house, including the laundry room, because he did not want to remind J.H. about the incident with defendant.

On March 21, 2019, another forensic interview of J.H. was conducted. [REDACTED.]

In her April 2019 forensic interview, E.L. stated [REDACTED].[2]

At trial, J.H. identified defendant in court. J.H. testified he had been alone in his family's laundry room with defendant. While in the laundry room, [REDACTED]. [REDACTED.]

---

[1]     J.H. was not one of the "small children" in the pornographic images recovered by police.

[2]     A forensic interview of C.L. was not conducted because she was uncooperative. When defendant's name was mentioned, C.L. "balled on the couch and just wouldn't move."

3

At trial, E.L. testified that Alma babysat her and her sister, but she did not remember defendant being there. E.L. testified she "can't really remember what happened" because it was "too long ago." She also did not recall discussing anything about babysitting with her mother or the police. She did remember speaking to a forensic interviewer. When E.L. saw J.H. at the courthouse, she did not remember him. But then she testified she recognized J.H.

2. *Defense Evidence*

Alma testified that she believed the charges against defendant were false.

Alma stated that she did not know whether all the electronic devices seized by the police belonged to defendant because friends would give him their malfunctioning devices.

She also testified that the laundry room in J.H.'s house was an unlikely place for such a crime to occur because it was a high-traffic area. Alma also did not believe that defendant could have shown E.L. or C.L. a video while babysitting without her noticing.

B. *Conviction and Sentence*

A jury convicted defendant of possession of material showing a minor engaging in or simulating sexual conduct (Pen. Code, § 311.11, subd. (a); count 1),[3] and oral copulation of a child 10 years old or younger (§ 288.7, subd. (b); count 2). The trial court sentenced defendant to 15 years to life on count 2 and 16 months on count 1, to run concurrently.

---

[3] All further statutory references are to the Penal Code unless otherwise stated.

Defendant timely appealed.

## DISCUSSION

I.     *J.H.'s Disclosure to His Father*

Defendant contends the trial court abused its discretion in admitting evidence of J.H.'s disclosure to his father.  Defendant argues, under what has traditionally been known as the fresh complaint doctrine, but is now more accurately called the prior disclosure doctrine (*People v. Flores* (2024) 101 Cal.App.5th 438, 443 (*Flores*)), J.H.'s disclosures were too delayed to be admissible.  He further contends defense counsel was ineffective for failing to request a limiting instruction that the statement may not be considered for its truth.

A.  *Background*

On October 18, 2022, the People filed a trial brief that raised a number of motions in limine, including a motion to admit J.H.'s March 16, 2019 statement to his father as a fresh complaint.  Defense counsel filed a response.  At the hearing on the motion, the prosecutor noted that J.H. was five years old at the time the alleged "inappropriate touching happened," and it was then the initial disclosure was made by his cousin, E.L.  J.H. did not disclose "any sort of wrongdoing by the defendant" at that time.  Rather, J.H.'s statement to his father occurred when he was six years old, almost two years after the incident.

Defense counsel objected to the admission of the statement because it was made almost two years after the incident and thus was not "volunteered a short time after a sexual assault."  Counsel also argued J.H.'s statement was in response to his father's questions and therefore was "not a natural [or

5

organic] complaint." The prosecutor disputed that "prompting" makes or breaks admission as a fresh complaint.

The trial court noted that it did not "believe . . . an inquiry by a parent is dispositive." Rather, the court was required to look at the circumstances surrounding the statements themselves. The court reasoned, "[g]iven the age of the child, . . . the relationship to his father, and the nature of the conversation itself and precisely the way that the conversation occurred, the court [found] that the statement qualif[ies] as a fresh complaint." Moreover, the court "engage[d] in the [Evid. Code, § ] 352 analysis." The court found that J.H.'s statements to his father were more probative than prejudicial and therefore "survives a [Evid. Code, § ] 352 analysis."

## B. *Prior Disclosure Doctrine*

"Historically, under the common law fresh-complaint doctrine, evidence that the alleged victim of a sexual offense disclosed or reported the incident to another person shortly after its occurrence" was admissible "for a limited, nonhearsay purpose—namely, simply to establish that such a complaint was made—in order to forestall the trier of fact from inferring erroneously that no complaint was made, and from further concluding, as a result of that mistaken inference, that the victim in fact had not been sexually assaulted." (*People v. Brown* (1994) 8 Cal.4th 746, 748–749 (*Brown*).) When the fresh-complaint doctrine was developed, it was based on the proposition that it was "natural for the victim of a sexual offense promptly to disclose the incident if it actually occurred." (*Id*. at pp. 749, 754–755.) Therefore, a victim's "complaint must have been truly 'fresh' or 'recent'" to be admissible under the doctrine in its original form. (*Id*. at p. 756.)

6

However, the theoretical premise for the doctrine has been debunked. (*Brown, supra*, 8 Cal.4th at p. 758.) "The overwhelming body of current empirical studies, data, and other information establishes that it is *not* inherently 'natural' for the victim to confide in someone or to disclose, immediately following commission of the offense, that he or she was sexually assaulted." (*Id.* at p. 758.) This is even more so for child victims, who "commonly are reluctant to report such incidents and delay in doing so, or fail to provide a full report." (*Ibid.*)

In light of these recent findings, the Supreme Court revisited the fresh complaint doctrine in *Brown, supra*, 8 Cal.4th 746. The court observed that, even if a victim "did not make a prompt complaint but instead disclosed the alleged incident only some time later, evidence of the fact and circumstances surrounding the" disclosure can nevertheless be relevant to decide whether the offense occurred. (*Id.* at p. 761.) Without evidence of the circumstances under which the victim ultimately disclosed the alleged offense to others, the jury could "be left with an incomplete or inaccurate view of all the pertinent facts." (*Ibid.*) Moreover, evidence of such circumstances, "including those that might shed light upon the reason for the delay, will reduce the risk that the jury, perhaps influenced by outmoded myths regarding the 'usual' or 'natural' response of victims of sexual offenses, will arrive at an erroneous conclusion with regard to whether the offense occurred." (*Id.* at pp. 761–762.)

The *Brown* court revised and updated the doctrine to more accurately reflect "the basis upon which the admissibility of such evidence should be evaluated." (*Brown, supra*, 8 Cal.4th at p. 763.) The *Brown* court specified that "the admissibility of such evidence does not turn invariably upon whether the victim's complaint was made immediately following the alleged assault or was preceded by some delay"; in other words, "the 'freshness' of a

7

complaint" is not an "essential prerequisite[ ] to the admissibility of such evidence." (*Id.* at pp. 750, 763.) Rather, the timing of the disclosure is simply a factor for the jury to consider in evaluating the evidence presented. (*Id.* at p. 763.)

Recently, in *Flores, supra*, 101 Cal.App.5th 438, this court noted that *Brown* itself "did not specify what if any weight should be given to the fact that the disclosure is delayed in determining its admissibility." (*Flores, supra*, at p. 452.) However, "a growing consensus among courts which have considered evolving jurisprudence and current research that a child victim's delay in disclosing sexual abuse should not affect the admissibility of the disclosure, but should instead be considered by the trier of fact as one factor in evaluating its weight." (*Id.* at p. 452.)

*Flores* also made clear "that under California's version of this evidentiary rule, a child victim's delay in disclosing sexual assault generally goes to the weight of the disclosure, not its admissibility." (*Flores, supra*, 101 Cal.App.5th at pp. 454–455.) A "disclosure should not be excluded solely because it is not 'fresh' enough." (*Id.* at p. 455.) Thus, courts have abandoned "the 'fresh complaint' misnomer and refer to this evidentiary rule more accurately as the 'prior disclosure' doctrine." (*Id.* at p. 433.) We will do the same.

"'We review claims regarding a trial court's ruling on the admissibility of evidence for abuse of discretion.'" (*Flores, supra,* 101 Cal.App.5th at p. 449.)

## C. *Analysis*

The trial court did not abuse its discretion. Consistent with *Brown* and *Flores*, the trial court correctly recognized that J.H.'s statements were not

inadmissible because they came almost two years after the incident. Any delay between the abuse and his disclosure was a factor for the jury to consider in assessing the weight and significance of the evidence.

J.H.'s disclosure was relevant to show that he told his father he was sexually abused, and the circumstances surrounding the disclosure. His father testified that J.H. was scared and started crying prior to the disclosure of his sexual abuse. He testified that J.H. was scared he was going to get in trouble. This was consistent with J.H.'s behavior during his subsequent forensic interview [REDACTED]. This evidence sheds light on the reason for J.H.'s delayed disclosure and "tended to forestall any erroneous inferences that might have arisen in the absence of that evidence." (*Brown, supra,* 8 Cal.4th at p. 764.)

Defendant contends J.H.'s disclosure to his father was inadmissible because it was not "the first time that the underlying incident came to light from any source." While this is true, defendant offers no authority that a statement may never be admitted as a prior disclosure if any other person (other than the victim) had, at some earlier point, tried to bring the incident to light. Rather, the doctrine is triggered by the alleged victim's disclosure of the sexual abuse to another person. (See *Brown, supra,* 8 Cal.4th at pp. 749– 750.) Although there were indications in July 2017 that unlawful sexual conduct occurred, J.H. was uncooperative and did not report the incident. J.H.'s later disclosure in 2019 informs us of the reason for his prior conduct [REDACTED].

Defendant asserts the trial court failed to consider the effect of J.H.'s initial denial in July 2017 in its "perfunctory" Evidence Code section 352 analysis. We disagree. After inquiries were made by the trial court, the prosecutor specifically advised the court of this initial disclosure. Therefore,

9

we can reasonably assume the court considered the 2017 disclosure in its section 352 analysis. (See Evid. Code, § 402, subd. (c) ["[a] ruling on the admissibility of evidence implies whatever finding of fact is prerequisite thereto; a separate or formal finding is unnecessary unless required by statute"]; see also *People v. Mataele* (2022) 13 Cal.5th 372, 414 ["'We presume that the court properly applied the law and acted within its discretion unless the appellant affirmatively shows otherwise'"], citing *Mejia v. City of Los Angeles* (2007) 156 Cal.App.4th 151, 158; *People v. Villatoro* (2012) 54 Cal.4th 1152, 1168 [appellate court may infer the trial court implicitly conducted a proper Evid. Code, § 352 analysis when there is no evidence to the contrary].)

Defendant's ineffective assistance of counsel claim for failure to request a limiting instruction on the prior disclosure also fails. To establish constitutionally inadequate representation, the defendant must show that (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense. (*Strickland v. Washington* (1984) 466 U.S. 668, 687.) We defer to trial counsel's reasonable tactical decisions in examining a claim of ineffective assistance of counsel. (*People v. Weaver* (2001) 26 Cal.4th 876, 925.) "If the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged, an appellate claim of ineffective assistance of counsel must be rejected unless counsel was asked for an explanation and failed to provide one, or there simply could be no satisfactory explanation." (*People v. Gray* (2005) 37 Cal.4th 168, 207.)

Here, there are reasonable satisfactory explanations why trial counsel chose not to request a limiting instruction. J.H.'s statement lacked specificity of the alleged assault other than it happened and where it happened. Trial counsel could have reasonably decided that a limiting instruction would needlessly draw the jury's attention once again to the disclosure. (*People v.*

*Carter* (2003) 30 Cal.4th 1166, 1223.) Therefore, we reject defendant's ineffective assistance of counsel claim.

In any event, it was not reasonably probable defendant would have obtained a more favorable result had a limiting instruction been given. (*People v. Benavides* (2005) 35 Cal.4th 69, 91; *People v. Watson* (1956) 46 Cal.2d 818, 836; *People v. Manning* (2008) 165 Cal.App.4th 870, 880.) Irrespective of how the jury construed the out-of-court statement, they still had the opportunity to hear from J.H. on the witness stand. Given that the jury had the chance to judge J.H.'s credibility in-person, and considering his extrajudicial statement was consistent with his forensic interview and trial testimony, it is unlikely the admission altered the outcome of the trial. (*People v. Manning, supra*, 165 Cal.App.4th at p. 881.) Therefore, any error in failing to give a limiting instruction was harmless. (*Ibid*.) No cause for reversal has been shown.

## II.    *J.H.'s 2019 Forensic Interview*

Defendant contends the trial court abused its discretion in admitting J.H.'s 2019 forensic interview as prior statements under Evidence Code section 1360. He argues the court "neither acknowledged nor addressed the impact of" J.H.'s 2017 forensic interview "as it related to the reliability determination [of] the . . . 2019 forensic interview." Defendant further argues defense counsel was ineffective for failing to vigorously argue against admission of this evidence.

### A.  *Background*

In their trial brief, the People moved to admit J.H.'s 2019 forensic interview under Evidence Code section 1360. In opposition, defense counsel

11

argued (among other things) that the out-of-court statements "contain no indicia of reliability."

At a hearing, the prosecutor described the entirety of the forensic interview. The court stated that "it seems to me that [Evid. Code, § ] 1360 permits this type of testimony. It's precisely what the purpose [of this statute] seems to fit—this exact situation." Defense counsel argued that the court needed to "review the interview and make a determination as to the reliability of the statements in the interview before making that determination." The court agreed that it must determine "that the time, content, and circumstances of the statement provide sufficient indicia of reliability" under Evidence Code section 1360.

After reviewing the parties' moving papers, hearing argument, and watching J.H.'s 2019 forensic interview, the trial court found the evidence admissible. As relevant here, the court reiterated that the "issue is whether or not at the time . . . , content, and circumstances of the statement provide sufficient indicia of reliability." The court stated that the interview room "seemed like a comfortable setting," that the "questions were not leading in nature," and J.H.'s body language was communicating he understood the questions. J.H. "was able to address the interviewer with almost everything she asked about in a very guileless manner." He was also repetitive on several matters, particularly about the sexual abuse, which tended to show that the statements were reliable. Moreover, J.H.'s "state of mind about being sad" demonstrated his statements were reliable and credible. The court further found J.H.'s responses were spontaneous and he did not appear to be "coached." The court found "no evidence of any motive to fabricate" the sexual abuse.

B. *Prior Statements*

Evidence Code section 1360 "creates a limited exception to the hearsay rule in criminal prosecutions for a child's statements describing acts of child abuse or neglect, including statements describing sexual abuse." (*People v. Roberto V.* (2001) 93 Cal.App.4th 1350, 1367.) "Section 1360 safeguards the reliability of a child's hearsay statements by requiring that: (1) the court find, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances surrounding the statement(s) provide sufficient indicia of reliability; (2) the child either testifies at the proceedings, or, if the child is unavailable to testify, other evidence corroborates the out-of-court statements; and (3) the proponent of the statement gives notice to the adverse party sufficiently in advance of the proceeding to provide him or her with a fair opportunity to defend against the statement." (*Ibid.*)

Defendant contends J.H.'s 2019 forensic interview had insufficient indicia of reliability. Our Supreme Court has identified the following nonexhaustive list of factors to determine the reliability of a child abuse victim's hearsay statement: (1) spontaneity and consistent repetition; (2) mental state of the declarant; (3) use of terminology unexpected of a child of similar age; (4) lack of motive to fabricate; and (5) the child's ability to understand the duty to tell the truth and to distinguish between truth and falsity. (*In re Cindy L.* (1997) 17 Cal.4th 15, 29–30, citing *Idaho v. Wright* (1990) 497 U.S. 805, 821–822, abrogated in part by *Crawford v. Washington* (2004) 541 U.S. 36, 60–62.)

C. *Analysis*

Defendant contends that the trial court abused its discretion in admitting J.H.'s 2019 forensic interview because it did not consider the 2017

13

forensic interview in its reliability determination. Defendant acknowledges "the prosecutor clearly apprised the court that during the first forensic interview" in 2017, J.H. "disclosed nothing to suggest anything amiss had occurred." The trial court was aware of the conflict between J.H.'s 2017 and 2019 forensic interviews. Unless there is evidence to the contrary, we presume the trial court considered the 2017 forensic interview in assessing the reliability of the 2019 statements. (See Evid. Code, § 402, subd. (c).) Defendant has offered no evidence to the contrary.

J.H.'s statements in his 2019 forensic interview were sufficiently reliable. [REDACTED.] J.H. used language typical of a child his age, [REDACTED]. The use of unsophisticated language refuted a suggestion of coaching. We agree with the trial court that J.H. lacked a motive to fabricate. [REDACTED.] Thus, the trial court did not abuse its discretion in admitting J.H.'s 2019 forensic interview under Evidence Code section 1360.

In light of our conclusion, we reject defendant's contention that defense counsel was ineffective for failing to zealously advocate for exclusion of the 2019 forensic interview. (See *Strickland v. Washington, supra,* 466 U.S. at p. 687 [the defendant must show counsel's deficient performance was prejudicial].)

III. *E.L.'s 2017 Statements to Law Enforcement and Her 2019 Forensic Interview*

Defendant argues the trial court abused its discretion in admitting E.L.'s 2017 statements to law enforcement, as well as her 2019 forensic interview.

14

A.  *Background*

In their trial brief, the People sought to admit several statements made by E.L. under Evidence Code section 1360.  Specifically, E.L.'s initial statement to her mother on July 5, 2017, her statements to law enforcement on July 13, 2017, and her forensic interview on April 15, 2019.  In opposition, defense counsel argued there was insufficient evidence of reliability.

At a hearing, the body-worn video of E.L.'s statements to law enforcement and the subsequent forensic interview were played for the court.  The trial court noted that E.L.'s statement to law enforcement was "a bit of a closer call" than J.H.'s 2019 forensic interview but ultimately found the statements "adequately reliable" to admit under Evidence Code section 1360.  Turning to E.L.'s forensic interview, the court determined it was also sufficiently reliable for admission under Evidence Code section 1360.  The court further found that any prejudice in admitting the videotapes of E.L.'s statements to law enforcement and her forensic interview was outweighed by their probative value.

B.  *Forfeiture*

Defendant argues E.L.'s statements were inadmissible because she was not a victim within the meaning of Evidence Code section 1360.  As previously discussed, the statute provides, in pertinent part: "In a criminal prosecution where the *victim* is a minor, a statement made by the *victim* when under the age of 12 describing any act of child abuse or neglect performed with or on the child by another . . . is not made inadmissible by the hearsay rule." (Evid. Code, § 1360, subd. (a), italics added.)  Because E.L. was not a named victim, but a witness, defendant contends her out-of-court statements do not qualify for admission under this hearsay exception.

Defendant forfeited this argument by failing to object on this ground below. Evidence Code section 353, subdivision (a), provides, "A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless: [¶] (a) There appears of record an objection to or a motion to exclude or to strike the evidence that was timely made and so stated as to make clear the *specific ground* of the objection or motion." (Italics added.) Accordingly, a "[d]efendant's failure to object on this specific [evidentiary] ground below forfeits his claim on appeal." (*People v. Clark* (2016) 63 Cal.4th 522, 603.) "'The reason for the [objection] requirement is manifest: a specifically grounded objection to a defined body of evidence serves to prevent error. It allows the trial judge to consider excluding the evidence or limiting its admission to avoid possible prejudice. It also allows the proponent of the evidence to lay additional foundation, modify the offer of proof, or take other steps designed to minimize the prospect of reversal.'" (*People v. Partida* (2005) 37 Cal.4th 428, 434.)

Here, defendant forfeited this claim because counsel never objected on the ground that E.L. was not a victim as articulated in Evidence Code section 1360. Rather, counsel only objected on the ground that her statements were not reliable.


IV.    *Evidence of the Remodeled Home*

Defendant contends the trial court abused its discretion in admitting evidence that J.H.'s father, William, had remodeled the home in an attempt to remove the layout of the original laundry room. He argues that there was no showing J.H. suffered trauma as a result of his sexual assault and

16

therefore it was irrelevant that the home was remodeled to prevent such trauma.

A. *Background*

During trial, the prosecutor asked the trial court for "clarification on the fresh-complaint ruling in regard to what's permissible for [William] to say." The prosecutor explained that William informed her "that the laundry room is now gone because of this case and he remodeled his home." The prosecutor sought to introduce this testimony along with photographs of the laundry room not for the truth of the matter asserted but rather, as to the effect on the listener (William). The prosecutor argued the evidence "goes to the veracity of [J.H.]." In response, defense counsel argued that the remodeling evidence was not relevant to J.H.'s veracity. The trial court found the evidence relevant and admissible.

During William's testimony, defense counsel renewed her objection that evidence of the remodeling does not fall within an exception to the hearsay rule.

The trial court again ruled evidence of the remodel was admissible, not for the truth of the matter asserted, but under the effect on the listener exception to the hearsay rule. The court stated the testimony also supported J.H.'s veracity and credibility.

B. *Analysis*

Defendant does not dispute the remodeling evidence fell within the effect on the listener exception to the hearsay rule. Rather, he contends the evidence was not relevant to a disputed issue at trial. "A hearsay objection to an out-of-court statement may not be overruled simply by identifying a

17

nonhearsay purpose for admitting the statement.  The trial court must also find that the nonhearsay purpose is relevant to an issue in dispute." (*People v. Armendariz* (1984) 37 Cal.3d 573, 585.)  "Relevant evidence is evidence 'having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action.'" (*People v. Jablonski* (2006) 37 Cal.4th 774, 821, quoting Evid. Code, § 210.)

We agree the trial court abused its discretion in admitting the remodeling evidence.  (*Flores, supra,* 101 Cal.App.5th 438.)  William's reaction to his son's disclosure was irrelevant to the disputed issues at trial.  As William testified, the remodeling of the home was done in an effort to eliminate any potential reminder of the incident for J.H.  It was not done in reaction to any observable trauma.  However, we conclude that its admission was harmless.  (*People v. Watson, supra,* 46 Cal.2d at p. 836.)  There was overwhelming evidence to support the oral copulation conviction.  J.H.'s 2019 forensic interview was consistent with his testimony at trial.  In addition, E.L.'s statements and the discovery of the child pornography in defendant's possession corroborated J.H.'s allegations of sexual abuse.


V.     *Cumulative Evidentiary Errors*

Defendant argues that cumulative error resulted in prejudice, requiring reversal.  We disagree.  "'[A] series of trial errors, though independently harmless, may in some circumstances rise by accretion to the level of reversible and prejudicial error.'" (*People v. Cunningham* (2001) 25 Cal.4th 926, 1009.)  Because only one error has been identified, and because that

error was harmless, there can be no prejudicial cumulative impact.[4] (See *People v. Duff* (2014) 58 Cal.4th 527, 562.)

VI.    *Cruel or Unusual Punishment*

Defendant was sentenced to 15 years to life for the oral copulation of a child 10 years old or younger (§ 288.7). He contends his sentence constitutes cruel or unusual punishment under the California Constitution.[5] We disagree.

Whether a sentence is cruel or unusual is a question of law for the appellate court, but the underlying disputed facts are viewed in the light most favorable to the trial court. (*People v. Martinez* (1999) 76 Cal.App.4th 489, 496.) Reviewing courts also "give substantial deference both to the Legislature's broad authority to determine the parameters for the punishments for crimes, and to the trial court's discretion in imposing specific sentences." (*People v. Gomez* (2018) 30 Cal.App.5th 493, 499.) A punishment is cruel or unusual in violation of the California Constitution "if, although not

---

[4]    Defendant contends that the evidentiary rulings violated his due process and fair trial rights. As noted by the Attorney General, defendant forfeits the arguments by failing to develop or support them with citation to authority. (See *Sviridov v. City of San Diego* (2017) 14 Cal.App.5th 514, 521 (*Sviridov*) [failure to present reasoned argument constitutes forfeiture]; see, e.g., *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830 (*Falcone & Fyke*) [absence of cogent legal argument or citation to authority forfeits the contention; "[w]e are not bound to develop appellants' arguments for them"].)

[5]    Defendant only references a violation of cruel and unusual punishment under the federal Constitution in a heading and does not further develop the argument. Therefore, we decline to address this argument on appeal. (See *Sviridov, supra,* 14 Cal.App.5th at p. 521; see also *Falcone & Fyke, supra,* 164 Cal.App.4th at p. 830.)

19

cruel or unusual in its method, it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch* (1972) 8 Cal.3d 410, 424 (*Lynch*).) In reviewing an indeterminate sentence, "it is the maximum term prescribed by the statute—not a lesser period thereafter fixed as an 'incentive to well-doing'—which must survive constitutional scrutiny." (*Id.* at pp. 416–417.) Thus, in evaluating defendant's sentence of 15 years to life, we must consider whether a life sentence withstands constitutional scrutiny, notwithstanding his parole eligibility in 15 years.

The Supreme Court described three factors to determine whether a sentence constitutes cruel or unusual punishment: (1) "the nature of the offense and/or the offender, with particular regard to the degree of danger both present to society"; (2) a comparison of the sentence to "punishments prescribed in the same jurisdiction for different offenses which, by the same test, must be deemed more serious"; and (3) a comparison of the sentence "with the punishments prescribed for the same offense in other jurisdictions having an identical or similar constitutional provision." (*Lynch, supra*, 8 Cal.3d at pp. 425–427, italics omitted.) "The weight afforded to each prong may vary by case" (*People v. Baker* (2018) 20 Cal.App.5th 711, 723 (*Baker*)), and "[d]isproportionality need not be established in all three areas." (*People v. Norman* (2003) 109 Cal.App.4th 221, 230.) "Only in the rarest of cases could a court declare that the length of a sentence mandated by the Legislature is unconstitutionally excessive." (*People v. Martinez, supra,* 76 Cal.App.4th at p. 494.)

A. *Nature of Offense*

In assessing the nature of the offense and the offender, we consider not only the offense in the abstract but also the facts of the crime in question—"i.e., the totality of the circumstances surrounding the commission of the offense in the case at bar, including such factors as its motive, the way it was committed, the extent of the defendant's involvement, and the consequences of his acts." (*People v. Dillon* (1983) 34 Cal.3d 441, 479; see *People v. Reyes* (2016) 246 Cal.App.4th 62, 87.) We also examine the defendant "in the concrete rather than the abstract . . . focus[ing] on the particular person before the court, [to ask] whether the punishment is grossly disproportionate to the defendant's individual culpability as shown by such factors as his age, prior criminality, personal characteristics, and state of mind." (*People v. Dillon, supra*, at p. 479.)

Defendant's molestation of a five-year-old child is a shocking crime. And our state has "a strong public policy to protect children of tender years." (*People v. Olsen* (1984) 36 Cal.3d 638, 646.) "[S]exual abuse of a child is a most serious crime and an act repugnant to the moral instincts of a decent people." (*Ashcroft v. Free Speech Coalition* (2002) 535 U.S. 234, 244.) Defendant's oral copulation of J.H. was calculated, premeditated, and predatory. This sexual assault was not the result of confusion, an impaired mental state, miscommunication, or another mitigating circumstance. Rather, the crime was an intentional act in which defendant inflicted great harm on a young child. (See *People v. Christensen* (2014) 229 Cal.App.4th 781, 806 ["lewd conduct on a child may not be the most grave of all offenses, but its seriousness is considerable. It may have lifelong consequences to the well-being of the child"].) We reject defendant's characterization that his

actions involved "the least possible amount of contact that satisfies the definition of oral copulation."[6]

Defendant contends that he was a law-abiding citizen and his retained forensic psychologist opined that defendant had "an extremely low risk to recidivate in the future." Also defendant's family and friends provided positive testimonials about his character. Although these factors are favorable to him, they do not outweigh the serious nature of the offense. (See *Baker, supra,* 20 Cal.App.5th at p. 725.)


B. *Comparison of Punishment for Other Crimes in California*

Defendant argues his sentence is disproportionate because the One Strike law (§ 667.61) requires the same sentence for the more serious crimes of rape, sexual penetration, sodomy, and oral copulation committed by force or violence. (§ 667.61, subd. (c).)

Defendant's argument was rejected in *Baker*. In that case, the court upheld the imposition of a sentence of 15 years to life for a single act of oral copulation of a child under 10 years old. (*Baker, supra,* 20 Cal.App.5th at pp. 727–730.) In *Baker,* the court explained that the One Strike law "imposes lengthy indeterminate terms of 15 years to life or 25 years to life for defendants convicted of specified sexual offenses if certain aggravating factors are found true. (§ 667.61, subds. (a)-(b).)" (*Baker, supra,* 20 Cal.App.5th at p. 729.) A defendant convicted of lewd acts or forcible oral copulation of a child under 14 and over 10 years younger than the defendant faces a 25-year-to-life sentence if certain aggravating factors are present,

---

[6] Contrary to defendant's contention, we cannot discern any relevance of a prior plea offer of 10 years for a lesser charge in this analysis. Defendant provides no legal authority to support his argument on this point.

such as the personal use of a deadly weapon in the commission of the crime or administration of a controlled substance to the victim.  (§ 667.61, subds. (c)(7), (e)(1)-(6), & (j)(2).)

The *Baker* court stated that if the defendant had been convicted of oral copulation or lewd acts on two children, or if other aggravating factors were found, he would face a sentence of 25 years to life under the One Strike law.  The court reasoned that "[t]hese provisions suggest a certain logic to the mandatory 15-year-to-life sentence under section 288.7, subdivision (b)." (*Baker, supra*, 20 Cal.App.5th at p. 729.)  The court also reiterated that "'[t]he power to define crimes and prescribe punishments is a legislative function.' [Citation.]  Our role is a limited one, and we proceed with great deference to the Legislature.  [Citation.]  'Furthermore, great deference is ordinarily paid to legislation designed to protect children, who all too frequently are helpless victims of sexual offenses.' [Citation.]" (*Baker, supra,* 20 Cal.App.5th at p. 729; accord *Gomez, supra*, 30 Cal.App.5th at p. 502.)

We agree with the court in *Baker* that "[a] comparison of the mandatory 15-year-to-life sentence under section 288.7, subdivision (b) to the punishments for similar and more serious sex offenses in California does not suggest this is that 'rarest of cases' in which 'the length of a sentence mandated by the Legislature is unconstitutionally excessive.' [Citation.]" (*Baker, supra,* 20 Cal.App.5th at p. 730.)


C. *Comparison of Punishment for Analogous Crimes in Other States*

For the third factor, we compare the sentence "with the punishments prescribed for the same offense in other jurisdictions having an identical or similar constitutional provision." (*Lynch, supra*, 8 Cal.3d at p. 427, italics omitted.)  "'That California's punishment scheme is among the most extreme

23

does not compel the conclusion that it is unconstitutionally cruel or unusual.' [Citation.] The state constitution 'does not require California to march in lockstep with other states in fashioning a penal code' or 'require "conforming our Penal Code to the 'majority rule' or the least common denominator of penalties nationwide."' [Citations.] Only 'when there appears a significant disproportion between a challenged penalty and that imposed for the same crime by our sister states' should the penalty be deemed suspect. [Citation.]" (*Baker, supra,* 20 Cal.App.5th at p. 730.) As pronounced in *Baker*: "Although California's punishment for orally copulating a child under 10 is no doubt severe, it is not so disproportionate to the punishment imposed in other states to render [the defendant's] sentence constitutionally suspect." (*Baker, supra,* 20 Cal.App.5th at p. 731.)

Therefore, in considering all three factors, we conclude defendant's indeterminate sentence under section 288.7, subdivision (b) is not "so disproportionate to his crime that it shocks the conscience or offends fundamental notions of human dignity." (*Baker, supra,* 20 Cal.App.5th at p. 732.)

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ZUKIN, P. J.

WE CONCUR:


MORI, J.                                    TAMZARIAN, J.

24